IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JAMES DIEMERT, | Civ. No. 6:24-cv-00339-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| FOREST RIVER, INC., | |
| Defendant. | |

AIKEN, District Judge.

This case comes before the Court on a Motion for Partial Summary Judgment filed by Defendant Forest River, Inc. ECF No. 21. The Court concludes that this motion is appropriate for resolution without oral argument. For the reasons set forth below, the Motion is GRANTED.

**LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury

could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

On January 25, 2022, Plaintiff James Diemert purchased and took possession of a 2021 Coachmen Sportcoach RV from Bish's RV, an RV dealer in Junction City, Oregon. Wheeler Decl. Ex. 1, at 1, ECF No. 22; Diemert Decl. ¶ 3, ECF No. 28-1. The RV was manufactured by Defendant Forest River, Inc. Diemert Decl. ¶ 3.

Plaintiff alleges that, since purchasing the RV, he has experienced a series of defects, which he reported to both the retailer and to Defendant. Diemert Decl. ¶ 5. Plaintiff has taken the RV in for repairs multiple times, totaling over 230 days of repair time on a vehicle that has been driven less than 5,000 miles. *Id.* ¶ 6.

## DISCUSSION

Plaintiff brings his claim under the Oregon Lemon Law ("OLL,"), ORS 646A.400, *et seq*. In relevant part, the OLL provides:

> (1) If the manufacturer or agents or authorized dealers of the manufacturer are unable to conform the vehicle to an applicable manufacturer's express warranty by repairing or correcting a defect or condition that substantially impairs the use, market value or safety of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall:
>
> (a) Replace the motor vehicle with a new motor vehicle; or
>
> (b) Accept the return of the vehicle from the consumer and refund to the consumer the full purchase or lease price and collateral charges paid, less a reasonable allowance for the consumer's use of the motor vehicle.

ORS 646A.404(1).

Consumer protection statutes like the OLL "are 'construed liberally' to effectuate their remedial purposes." *Roblin v. Newmar Corp.*, 859 Fed. App'x 171, 172 (9th Cir. 2021) (quoting *Halperin v. Pitts*, 352 Or. 482, 495 (2012)).

Under the OLL, a "motor home" is "a motor vehicle that is a new or demonstrator vehicle unit built on, or permanently attached to, a self-propelled motor vehicle chassis, chassis cab or van that becomes an integral part of the completed vehicle, and that is designed to provide temporary living quarters for recreational, camping or travel use." ORS 646A.400(3)(a). However:

> "Motor home" does not include "living facility components," which means those items designed, used or maintained primarily for the living quarters portion of the motor home, including but not limited to the flooring, plumbing fixtures, appliances, water heater, fabrics, door and furniture hardware, lighting fixtures, generators, roof heating and air conditioning units, cabinets, countertops, furniture and audio-visual equipment.

ORS 646A.400(3)(c).

During discovery, Plaintiff initially identified thirteen defects in the RV: (1) the kitchen stove; (2) the left turn signal; (3) the fireplace; (4) the refrigerator; (5) the dash lights; (6) the engine grill; (7) the recliners; (8) the screen door; (9) the ceiling heater; (10) a kitchen sink water leak; (11) a propane water heater leak; (12) a hydraulic fluid leak; and (13) a hole under the kitchen sink. Wheeler Decl. Ex. 2, at 4-5. In his Response, Plaintiff concedes all but two these alleged defects. Pl. Resp. 4 ("However, even after receiving the RV back on November 15, 2023, there were still two issues with the RV that qualify for relief under the Lemon Law, the left turn signal that does not can cancel and the large hole in the floor.").

### I.    The Left Turn Signal

Plaintiff asserts that the "left turn signal will cancel after making sharp turns, but not after making slight or sweeping turns." Diemert Decl. ¶ 9.

Defendant asserts that it is entitled to summary judgment on Plaintiff's OLL claim on the left turn signal on the grounds that (1) the condition of the left turn signal is in full conformance with Forest River's express warranty and (2) it does not substantially impair the use, market value or safety of the RV. Defendant has submitted a video of the RV being test-driven which demonstrates that the left turn signal disengages after the vehicle makes a turn. Stanton Decl. Ex. 2. ECF No. 24. A court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

Jason Brewer, the Director of Owner Relations for Defendant, reviewed the video of the turn signal and affirms that it is "visually and audibly operating normally, including when it can be heard 'clicking' an additional time after mechanically resetting itself as the Sportcoach's steering wheel is returned to center toward the completion of the turn." Brewer Decl. ¶ 5. Brewer affirms that "[h]ad plaintiff presented to Forest River a warranty claim based on the left turn signal, it would have been denied as the turn signal is functioning normally and not otherwise in need of repair or replacement in accordance with Forest River's warranty." *Id.* ¶ 6.

The Court has also reviewed the video and, interpreting the facts in the light depicted in the video, likewise concludes that the turn signal is operating normally.[1] Plaintiff may subjectively dissatisfied with how the turn signal works, but no reasonable jury could conclude that the turn signal was defective. Defendant is entitled to summary judgment on Plaintiff's claim as to the turn signal.

## II.     The Kitchen Sink Hole

Plaintiff asserts that there is a "hole in the floor is approximately 4 inches long and 1 and a half inches wide" under the RV's kitchen sink. Diemert Decl. ¶ 8. At his deposition, Plaintiff testified that the hole was visible if one opened the slide-out door,

---

[1] Although not part of the Court's analysis, the Court notes that turn signals are intended to cancel after sharp turns but ordinarily must be manually disengaged after less sharp turns, as in the case of a lane change or a sweeping turn. Defendant points to the guidance published by the Oregon Department of Transportation stating that the turn signal should be "canceled" after completing a lane change.
https://www.oregon.gov/odot/DMV/Pages/Online_Parent_Guide_to_Teen_Driving/08_Complex_Driving_Skills.aspx (last accessed Mar. 6, 2026). The "defect" Plaintiff complains of appears to be the normal functioning of a turn signal.

"took a flashlight in there" and look to "where the pipes and stuff are running and going in through the floor." Supp. Wheeler Decl. Ex. 1 at 2-3. ECF No. 30. Plaintiff stated that the hole was created as a pass-through for plumbing lines and then sealed with spray foam and black undercoating in a manner Plaintiff found "pretty crude and amateurish," and "like a 13-year-old did it that didn't know what he was doing." *Id.* at 4, 7. Plaintiff testified that he believed that it should have been fixed with padding and a rigid surface screwed into place. *Id.* at 6-7.

Defendant asserts that the "hole" in the kitchen sink floor is not actionable under the OLL because it is part of the "living facility component" of the RV.

As noted, the OLL "specifically exempts 'living facility components,' defined as 'those items designed, used or maintained primarily for the living quarters portion of the motor home.'" *Sarkisian v. Newmar Indus., Inc.*, Case No. 3:21-cv-1123-IM, 2023 WL 5206953, at *4 (D. Or. Aug. 14, 2023) (quoting ORS 646A.400(3)(c)). The "hole" in question was clearly cut intentionally to allow the passage of plumbing lines for the sink in the living quarters of the RV and then sealed, albeit not to Plaintiff's satisfaction. This is one of the "living facility components" of the motorhome and it is excluded from the OLL under ORS 646A.400(3)(c). Defendants are therefore entitled to summary judgment on the claim for the hole under the kitchen sink.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment, ECF No. 21, is GRANTED. Because resolution of this motion entirely disposes of Plaintiff's claim, *see* Def. Mot. 2 (noting that the collective effect of its motions for partial summary judgment is complete summary judgment), final judgment shall be entered in this case.

It is so ORDERED and DATED this ___9th___ day of March 2026.

       /s/Ann Aiken
      ANN AIKEN
      United States District Judge